IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TONYA M.,[1]

                    Plaintiff,

          v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.

Case No. 3:23-cv-01494-SB

**OPINION AND ORDER**

_____

**BECKERMAN, U.S. Magistrate Judge.**

      Tonya M. ("Plaintiff") brings this appeal challenging the Commissioner of Social

Security's ("Commissioner") denial of her applications for Disability Insurance Benefits ("DIB")

and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and the parties have

consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). For the

_____

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case.

reasons explained below, the Court affirms the Commissioner's decision because it is free of

harmful legal error and supported by substantial evidence.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings

are "not supported by substantial evidence or [are] based on legal error." *Bray v. Comm'r Soc.*

*Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d

880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of

evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039

(9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a

specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir.

2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court

must consider the entire record, weighing the evidence that both supports and detracts from the

Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or

denial of Social Security benefits, the district court "may not substitute [its] judgment for the

[Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152

(9th Cir. 2007)).

///

///

///

///

///

# BACKGROUND

## I.    PLAINTIFF'S APPLICATIONS

Plaintiff was born in September 1979, making her thirty-eight years old on March 31, 2018, her alleged disability onset date.[2] (Tr. 32, 70.) Plaintiff is a high school graduate and has past work experience as a bartender. (*Id.* at 32, 78.) In her applications for benefits, Plaintiff alleged disability due to post traumatic stress disorder ("PTSD"), generalized anxiety disorder, severe panic attacks, difficulty concentrating, difficulty leaving her house, night terrors and trouble sleeping, and sciatica. (*Id.* at 312.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on May 23, 2022, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 174.) Plaintiff and her attorney appeared in person at an administrative hearing on September 29, 2022, and a vocational expert appeared by telephone and testified at the hearing. (*Id.* at 39-69.) On October 21, 2022, the ALJ issued a written decision denying Plaintiff's applications. (*Id.* at 17-34.)

///

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 1:07-cv-01016, 2008 WL 4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008) (citation omitted). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty-quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citation omitted). Thus, Plaintiff's date last insured ("DLI") of September 30, 2020 (Tr. 17) reflects the date on which her insured status terminated based on the previous accumulation of quarters of coverage. If Plaintiff established that she was disabled on or before September 30, 2020, she is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec.*, No. 2:15-cv-02386, 2016 WL 4494471, at *1 n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

On August 18, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-3.) Plaintiff now seeks judicial review of that decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id*. at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

PAGE 4 – OPINION AND ORDER

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 17-34.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 31, 2018, the alleged onset date. (*Id.* at 19.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: "lumbar spine degenerative disc disease with sciatica, metatarsalgia, plantar fasciitis, patellofemoral instability of the right knee, obesity, reactive depression, [PTSD], anxiety, and mixed anxiety and depressive disorder." (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 20.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) Plaintiff can occasionally climb, (2) Plaintiff can occasionally balance, (3) Plaintiff needs occasional use of a cane for ambulation to and from the work station; (4) Plaintiff can understand and remember simple instructions and has sufficient concentration to complete simple tasks; and (5) Plaintiff can tolerate occasional contact with the general public and frequent interactions with coworkers. (*Id.* at 22.) At step four, the ALJ concluded that Plaintiff was not able to perform her past relevant work as a bartender. (*Id.* at 32.) Additionally, at step five, the ALJ determined that a significant number of jobs existed in the national economy that she could perform, including work as an office helper, mailroom clerk, and photocopy machine operator. (*Id.* at 33.)

## DISCUSSION

Plaintiff argues that the ALJ erred by (i) failing to provide legally sufficient reasons supported by substantial evidence for discounting Dr. Tatsuro Ogisu's medical opinion, (ii)

discounting Plaintiff's symptom testimony without providing specific, clear, and convincing

reasons, and (iii) failing to reconcile a conflict at step five. (Pl.'s Opening Br. ("Pl.'s Br.") at 11-

30, ECF No. 10.) As explained below, the Court concludes that the ALJ's decision is free of

harmful legal error and supported by substantial evidence, and the Court therefore affirms the

Commissioner's decision.

## I.    MEDICAL OPINION EVIDENCE

Plaintiff argues that the ALJ failed to provide legally sufficient reasons supported by

substantial evidence to discount Dr. Ogisu's medical opinion. (Pl.'s Br. at 11-21.)

### A.    Applicable Law

The Ninth Circuit has recognized that the Social Security Administration's ("SSA")

updated regulations for evaluating medical evidence "apply to [a claimant's Social Security case

if] she filed her claim on or after March 27, 2017." *Woods v. Kijakazi*, 32 F.4th 785, 787-92 (9th

Cir. 2022).[3] Under the new regulations, "'[t]he most important factors' that [an ALJ] considers

when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'"

*Id*. at 791 (quoting 20 C.F.R. § 404.1520c(a)). "Supportability means the extent to which a

medical source supports the medical opinion by explaining the 'relevant . . . objective medical

_____

[3] The Court notes that *Woods* analyzed the new regulations for DIB, while Plaintiff seeks
DIB and SSI benefits. However, the new regulations for DIB and SSI benefits are "virtually
identical" and therefore the analysis in *Woods* applies here. *See Wallis v. Comm'r of Soc. Sec.
Admin*., No. CV-21-08132-PHX-JAT, 2022 WL 2527116, at *1 (D. Ariz. July 7, 2022) ("The
Court notes that the relevant regulations for both DIB and SSI applications are virtually identical.
Thus, the Court will only cite to DIB regulations found in 20 C.F.R. Part 404. For reference,
parallel SSI regulations are listed in 20 C.F.R. Part 416."); *see also Fryer v. Kijakazi*, No. 21-
36004, 2022 WL 17958630, at *1 (9th Cir. Dec. 27, 2022) (noting that the new regulations for
DIB and SSI claims are "codified at 20 C.F.R. [parts] 404 [and] 416," respectively (citing
Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844
(Jan. 18, 2017))).

evidence.'" *Id*. at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent

to which a medical opinion is 'consistent . . . with the evidence from other medical sources and

nonmedical sources in the claim.'" *Id*. at 792 (citing 20 C.F.R. § 404.1520c(c)(2)). Even under

the new regulations, "an ALJ cannot reject an examining or treating doctor's opinion as

unsupported or inconsistent without providing an explanation supported by substantial

evidence." *Id*. An ALJ "must articulate how persuasive [the ALJ] finds all the medical opinions

from each doctor or other source," and must explain how he or she "considered the supportability

and consistency factors in reaching these findings." *Id*. (simplified and citing 20 C.F.R. §§

404.1520c(b)).

### B.    Dr. Ogisu's Opinion

On August 16, 2021, Dr. Ogisu performed a consultative examination to evaluate

Plaintiff's back pain and sciatica. (*See* Tr. 500-04.) Dr. Ogisu noted Plaintiff's following

complaints: intermittent "back issues" since teenage years, a gradual onset of "more severe"

right-side pain in her lower back and hip pain while working as a bartender, "shooting pain"

down the right leg to the foot, and difficulty with walking due to pain. (*Id*. at 500-01.) Dr. Ogisu

noted that Plaintiff described "typical radicular symptoms" and that "a few findings consistent

with a right lumbar radiculopathy are present." (*Id*. at 503.) Dr. Ogisu reviewed Plaintiff's

lumbar x-ray from September 2019 and lumbar magnetic resonance imaging ("MRI") from

December 2019 and noted that "[p]rior lumbar imaging does not help to explain these symptoms

or findings." (*Id*.) Based on his findings and review of Plaintiff's medical records, Dr. Ogisu

diagnosed Plaintiff with sciatica, chronic right-sided low back pain, and leg length discrepancy.

(*Id*.)

///

Dr. Ogisu opined that, during an eight-hour workday, Plaintiff could sit for at least four hours, but fewer than six hours total; walk and stand for at least two hours, but fewer than four hours total; and lift up to 10 pounds occasionally. (*Id.*) Dr. Ogisu opined that an assistive device is not required "for each and every step" but recommended Plaintiff's use of a cane when leaving the home. (*Id.* at 504.) As Plaintiff's attorney noted at the hearing, Dr. Ogisu "found that [Plaintiff] could perform sedentary work." (*Id.* at 45); *see* 20 C.F.R. § 404.1567(a) (defining "sedentary work").

### C.    The ALJ's Evaluation

The ALJ agreed with Dr. Ogisu as to the following: Plaintiff's severe impairments include lumbar spine degenerative disc disease with sciatica (Tr. 19); her impairments "significantly limit" her ability to perform basic work activities (*id.*); and she needs "occasional use of a cane[.]" (*Id.* at 22.) However, in assessing Plaintiff's RFC, the ALJ determined that Plaintiff was capable of performing "light work" which is less restrictive than sedentary work. *See* 20 C.F.R. § 404.1567(b) (defining "light work"). The ALJ found Dr. Ogisu's more restrictive assessment "not particularly persuasive" because it was not supported by objective medical evidence and was inconsistent with other medical opinions in the record. (*See id.* at 31, citing 500-04.)

### D.    Analysis

Plaintiff argues that the ALJ "failed to apply the correct legal standards" when evaluating Dr. Ogisu's opinion and improperly discounted his opinion. (Pl.'s Br. at 11.) The Court finds that the ALJ properly evaluated Dr. Ogisu's opinion for supportability and consistency and finds no legal error in the ALJ's analysis.

///

### 1.    Supportability

Addressing supportability, the ALJ found that Dr. Ogisu's opinion was "generally not supported by the medical evidence of record, including his own examination of [Plaintiff]." (Tr. 31.) After examining Plaintiff, Dr. Ogisu noted only that "a few" of his findings were consistent with Plaintiff's right side sciatica. (*Id*. at 503.) It was therefore reasonable for the ALJ to note that Dr. Ogisu's findings "were not very impressive" and to discount his opinion for that reason. (*Id*. at 31.)

Plaintiff argues that Dr. Ogisu's findings such as right sided muscle atrophy and sensory deficits in Plaintiff's right foot supported his opinion as to Plaintiff's limitations. (Pl.'s Br. at 15.) However, the ALJ addressed those findings and noted that Plaintiff's "paraspinal muscles were difficult to assess due to obesity and stance" and that Plaintiff had been wearing braces, "which may have caused some soft tissue compression." (Tr. 26.) Furthermore, "[i]f the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

The ALJ also reasonably determined that Dr. Ogisu's opinions "are generally not supported by the medical evidence of record." (Tr. 31.) The ALJ noted that Dr. Ogisu "appears to rely heavily on the subjective report of symptoms and limitations provided by the claimant rather than the objective evidence" (*id*.), which is an appropriate basis for discounting a medical opinion. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008))). It is also

undisputed that Dr. Ogisu did not cite clinical findings or other objective evidence from Plaintiff's medical record in support of his opinion. (*See* Tr. 500-04.) In fact, as the ALJ noted, Dr. Ogisu reviewed Plaintiff's lumbar x-ray from September 2019 and her lumbar MRI from December 2019 and specifically found that Plaintiff's "[p]rior lumbar imaging does *not* help to explain [her] symptoms." (*Id*. at 503) (emphasis added). Thus, the Court finds no legal error in the ALJ's supportability analysis. *See Waldram v. Kijakazi*, No. 22-35893, 2023 WL 8433769, at *1-2 (9th Cir. Dec. 5, 2023) (finding that the ALJ "did not commit legal error in discrediting . . . [the doctor]'s opinion" based on supportability where the "relevant objective medical evidence . . . did not support his proposed . . . limitations" (citing *Woods*, 32 F.4th at 791-92)).

Plaintiff argues that the ALJ failed to address medical evidence that supports Dr. Ogisu's assessment that Plaintiff was only capable of performing sedentary work. (Pl.'s Br. at 13-16.) Plaintiff repeatedly cites "Addendum B" in which Dr. Timothy Sellers reviewed Plaintiff's MRI from December 2019 and noted "a small right extraforaminal disc protrusion at L2-3 which slightly abuts the L2 spinal nerve . . . [that] appears to correlate with [Plaintiff]'s right lateral thigh pain." (Tr. 498.) However, as Plaintiff acknowledges, the ALJ discussed Addendum B along with other evidence that supports Plaintiff's symptoms and concluded that the medical record, overall, supports the finding that Plaintiff has "significant physical limitations." (*Id*. at 26.) The ALJ also found that "considering the limited objective evidence to correlate [Plaintiff's] complaints, and her quite conservative treatment," there was "little support" for a finding that Plaintiff has more restrictions than those set forth in the ALJ's light work RFC. (*Id*.) Plaintiff insists that the ALJ had to "reconcile" Dr. Ogisu's opinion with Addendum B before the ALJ could find that Dr. Ogisu's opinion was not supported by objective evidence, but the Court finds

no contradiction between Addendum B and the ALJ's finding that Plaintiff was capable of performing less restrictive work than Dr. Ogisu opined.

Furthermore, the record demonstrates a difference of opinion among medical providers as to the results of Plaintiff's December 2019 lumbar MRI, and "[i]f the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford*, 950 F.3d at 1154 (simplified). For example, although Dr. Sellers noted a "small . . . disc protrusion at L2-3 which slightly abuts the L2 spinal nerve," Dr. Ogisu found only "mild generalized facet arthrosis with no disc protrusion/extrusion, [or] significant canal or foraminal stenosis." (Tr. 501.) Dr. Anthony Bellsmith reviewed the same MRI and found that it revealed "no evidence of central or foraminal stenosis, no evidence of nerve impingement." (*Id*. at 415.) Dr. Andrew VanderJagt reviewed Plaintiff's December 2019 MRI and compared it with Plaintiff's MRI from October 2021 and found the results "unremarkable and unchanged." (*Id.* at 527.) Dr. VanderJagt noted "[p]ossible encroachment in the far lateral recess L1-L2 as previously described[,]" but "[n]o significant spinal canal stenosis or neuroforaminal narrowing." (*Id*.) Given the variation among Drs. Sellers, Ogisu, Bellsmith, and VanderJagt regarding the December 2019 MRI, the Court defers to the ALJ who found that the objective evidence reflects that Plaintiff has significant physical limitations, but not to the extent that she is only capable of sedentary work as Dr. Ogisu opined. *See Ford*, 950 F.3d at 1154.

In sum, the ALJ adequately considered Dr. Ogisu's findings and the objective medical evidence, including Addendum B, in partially discounting Dr. Ogisu's opinion based on supportability, and the Court finds no legal error. *See White v. Comm'r of Soc. Sec*., No. 1:22-CV-00615-BAM, 2023 WL 3977506, at *7 (E.D. Cal. June 13, 2023) (noting that the plaintiff "refers the Court to certain treatment records that purport to interpret [the p]laintiff's [MRI and

x-ray results] and relate them to her symptoms," and finding that, "[t]o the extent [the p]laintiff suggests an alternative interpretation of the evidence, this is not sufficient to establish reversible error" (citing *Ford*, 950 F.3d at 1154)).

### 2. Consistency

The ALJ also sufficiently addressed the consistency of Dr. Ogisu's opinion with other evidence when finding it unpersuasive. (*See* Tr. 31.)

"An opinion's persuasiveness is a function of its consistency with 'evidence from other medical sources and nonmedical sources in the claim,' which the ALJ must consider when evaluating medical opinions." *Jennifer M. v. Comm'r, Soc. Sec. Admin.*, No. 3:23-cv-00706-YY, 2024 WL 1070627, at *7 (D. Or. Mar. 12, 2024) (first citing 20 C.F.R. § 404.1520c(c)(2); then citing 20 C.F.R. § 416.920c(c)(2); and then citing *Woods*, 32 F.4th at 792).

Here, the ALJ reasonably concluded that Dr. Ogisu's opinion that Plaintiff is limited to sedentary work conflicted with the opinions of the state agency medical consultants, Dr. Lloyd Wiggins and Dr. Thomas Davenport, who found that Plaintiff is capable of light exertional work with limitations. (*See* Tr. 31, 75, 97.) The ALJ noted that Drs. Wiggins and Davenport "were consistent in finding that Plaintiff could perform light exertional activity," and both consultants found that a light work RFC "is supported by the medical evidence of record including [Plaintiff]'s largely normal objective studies." (*Id.*) The ALJ specifically noted that Dr. Davenport had reviewed Plaintiff's most recent lumbar imaging from October 2021 which, the ALJ found, "did not reveal any additional findings supportive of [Plaintiff's] symptoms." (*Id.* at 31.)

Plaintiff does not dispute the inconsistencies between the opinions of Dr. Ogisu and the state consultants. Rather, Plaintiff speculates that "none of the state agency reviewers appeared

to have access[ed] or discussed Addendum B" and argues that the ALJ failed to address "discrepancies between their findings and the other practitioners who assessed . . . Addendum B." (Pl.'s Br. at 17.) However, there is no evidence that the state consultants failed to review any material portions of Plaintiff's medical records, including Addendum B. Furthermore, Plaintiff's argument is a redux of her arguments above regarding the results of Plaintiff's December 2019 MRI which, again, are "susceptible to more than one rational interpretation." *Ford*, 950 F.3d at 1154. In sum, Plaintiff fails to identify any legal error in the ALJ's consideration of the consistency factor.

It was therefore reasonable for the ALJ partially to discount Dr. Ogisu's opinion based on inconsistency with the opinions of Drs. Wiggins and Davenport, and the Court finds no error. *See Kathy Jean T. v. Saul*, No. 20CV1090-RBB, 2021 WL 2156179, at *7 (S.D. Cal. May 27, 2021) (finding that the ALJ "was entitled to consider the doctors' opinions, including their interpretation of the MRI findings, and to resolve conflicts in the medical evidence" and that the ALJ "reasonably found [the doctor]'s opinions were not consistent with the findings of other medical sources in the record" (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009))).

However, even if the ALJ committed legal error in partially discounting Dr. Ogisu's opinion based on consistency, it would be harmless because the ALJ identified valid grounds for discounting Dr. Ogisu's opinion based on supportability, as discussed above. *See Tracy F. v. O'Malley*, No. 122CV00233DCNDKG, 2024 WL 1701572, at *4 (D. Idaho Apr. 19, 2024) ("[P]rovided an ALJ provides an explanation supported by substantial evidence, the ALJ can deem a medical opinion unpersuasive solely because it is either inconsistent or unsupported." (first citing *Allen v. Kijakazi*, No. 22-35056, 2023 WL 2728857, at *1 (9th Cir. Mar. 31, 2023); and then citing *Woods*, 32 F.4th at 792-93)).

PAGE 13 – OPINION AND ORDER

## II.     PLAINTIFF'S SYMPTOM TESTIMONY

Plaintiff also argues that the ALJ improperly discounted her symptom testimony. (Pl.'s Br. at 21-30.)

### A.     Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim*, 763 F.3d at 1163 (simplified).

### B.     Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (See Tr. 23, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms").[4] The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom

---

[4] Plaintiff argues that the ALJ "failed to properly assess the first step in the two-factor test[.]" (Pl.'s Br. at 23.) The Court disagrees, and finds that the ALJ properly determined that there was medical evidence in the record "which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison*, 759 F.3d at 1014 (citation omitted).

testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ met that standard here.

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (first citing *Tommasetti*, 533 F.3d at 1040; then citing *Lingenfelter*, 504 F.3d at 1040; and then citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)). The Ninth Circuit has also "indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

### 1.    Medical Evidence

The ALJ discounted Plaintiff's reports of debilitating pain in her lower back and left leg based on medical noncompliance, effective treatment, and conservative treatment. (*See* Tr. 23-30.)

First, the ALJ noted that "the main recommended treatment for [Plaintiff] has been physical therapy, but there is no evidence she has followed through with several referrals" (*id*. at 23), which Plaintiff does not dispute or explain. *See Trevizo*, 871 F.3d at 679 ("A claimant's subjective symptom testimony may be undermined by an unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment.") (simplified).

///

PAGE 15 – OPINION AND ORDER

Second, the ALJ noted that Plaintiff reported to a medical provider that "tizanidine and naproxen helped keep her lower back pain intensity down and tolerable," and in a separate examination Plaintiff "felt diclofenac was providing her significant symptom relief." (Tr. 25.) *See Tommasetti*, 533 F.3d at 1040 (finding that the plaintiff "respond[ing] favorably to . . . the use of anti-inflammatory medication . . . undermines [his] reports regarding the disabling nature of his pain"). Plaintiff asserts that tizanidine became ineffective and that her provider started her on "Robaxin, lyrica, and meloxicam" (Pl.'s Br. at 26), but the ALJ acknowledged Plaintiff's medication changes and noted that she experienced "moderate improvement" on the new medications Plaintiff noted. (*See* Tr. 30, citing *id.* at 532.) Furthermore, Plaintiff does not dispute that she reported improvement after taking multiple pain medications, or that her providers largely recommended conservative treatment for her back and leg pain. *See Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) (referring to physical therapy and pain medication as "conservative treatment") (simplified); *see also Tommasetti*, 533 F.3d at 1040 (noting that the plaintiff "respond[ing] favorably to conservative treatment . . . undermines [his] reports regarding the disabling nature of his pain").

Plaintiff takes issue with the ALJ's remark that "[Plaintiff] notably made no mention of any physical limitations at the hearing, and instead focused on her mental health issues as the reason she was not able to work." (*See* Pl.'s Br. at 24, citing Tr. 23.) However, the hearing transcript confirms that Plaintiff testified only as to her alleged mental impairments and that Plaintiff's attorney conveyed to the ALJ that Plaintiff's anxiety disorder is her "biggest problem." (*See* Tr. 44.) Furthermore, SSR 16-3p directs ALJs to "consider the consistency of the individual's own statements" and "compare statements an individual makes in connection to an individual's claim for disability benefits with any existing statements the individual made under

other circumstances." (*Id.*, quoting SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).) It was

therefore appropriate for the ALJ to point out inconsistencies in how Plaintiff reported her own

symptoms. *See* SSR 16-3p; *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)

("[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the

testimony and the claimant's conduct."), *superseded in part by statute on other grounds*.

      The ALJ also properly discounted Plaintiff's testimony regarding "multiple debilitating

side effects from her medications in spite of their efficacy." (Tr. 29.) The ALJ acknowledged

Plaintiff's allegation that her medications cause her side effects including "bowel issues,

headaches, heartburn, chest pain, . . . drowsiness . . . dry mouth, insomnia, and difficulty

remembering things[.]" (*Id.* at 23.) However, the ALJ found that Plaintiff's "alleged side effects

are not recorded in the medical evidence of record." (*Id.* at 29.) Plaintiff argues that the ALJ's

citations to the record are "factually incorrect" (Pl.'s Br. at 27), but the Court finds no erroneous

citations in the ALJ's discussion. Furthermore, Plaintiff fails to cite any medical evidence that

confirms her reported side effects, despite arguing that the evidence is "specifically positive" for

the side effects that Plaintiff alleges she experiences. (Pl.'s Br. at 27, citing Tr. 417, 439.)

      Finally, Plaintiff argues that the ALJ improperly evaluated her character in finding that

"[t]he fact that [Plaintiff] provided this inaccurate information [regarding medication side

effects] suggests some of what [Plaintiff] has alleged may be similarly unreliable." (Tr. at 30.

Despite that statement, the ALJ did not in fact discount Plaintiff's testimony based on her

character or general credibility. Rather, the ALJ discounted Plaintiff's testimony based on the

lack of medical evidence corroborating that Plaintiff's medications caused her to experience the

side effects that she claimed. (*See id.* at 29-30.)

///

PAGE 17 – OPINION AND ORDER

In sum, the Court finds that the ALJ provided clear and convincing reasons supported by substantial evidence to discount Plaintiff's symptom testimony based on medical noncompliance, effective treatment, conservative treatment, and a lack of supporting objective medical evidence.

### 2.    Daily Activities

The ALJ also discounted Plaintiff's symptom testimony on the basis of inconsistencies between Plaintiff's reported daily activities and her alleged inability to work. (Tr. 30.) Plaintiff argues that the "ALJ did not explain how [Plaintiff]'s activities, as described, contradicted her other testimony." (Pl.'s Br. at 29.) However, the ALJ discounted Plaintiff's testimony based on evidence demonstrating that Plaintiff "has remained quite independent, active and interactive with others[.]" (Tr. 34.) As the ALJ pointed out, Plaintiff reported house and pet sitting for her sister, helping her sister move, helping her neighbor, walking her dog, leaving her home to buy groceries, and taking care of her niece two weekends each month. (*Id.* at 30.) The ALJ also noted that Plaintiff needs no assistance with personal care, plays board games with her niece, regularly goes to the doctor's office and her parents' house, and cooks and cleans for herself despite getting help from friends with other household tasks. (*Id.*) Thus, contrary to Plaintiff's assertion, these were not "isolated activities" and the ALJ reasonably relied on them in discounting Plaintiff's testimony.

Plaintiff argues that, despite her daily activities, "she is in constant pain" (Pl.'s Br. at 29), but "[e]ven if the claimant experiences some difficulty or pain, her daily activities may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Smartt*, 53 F.4th at 499 (simplified). Furthermore, "if, despite his [or her] claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be

farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Smartt*, 53 F.4th at 499-500 (noting that activities of cooking, cleaning, childcare, grocery shopping with assistance, and completing various chores in small increments due to pain "require many of the same capabilities necessary for obtaining and maintaining employment") (simplified).

For these reasons, the Court concludes that the ALJ provided clear and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony based on her daily activities. *See Jones v. Saul*, 818 F. App'x 781, 781-82 (9th Cir. 2020) (holding that the ALJ provided clear and convincing reasons for discounting the claimant's testimony and thus "[a]ny error in the ALJ's additional reasons for discounting [the claimant's] symptom testimony [were] harmless"); *Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's discounting of the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence" for doing so).

## III.    STEP FIVE ANLYSIS

Albeit not in a separate section, Plaintiff also argues that the ALJ failed to reconcile an apparent conflict between her RFC and the reasoning requirements of the jobs the ALJ identified. (Pl.'s Br. at 19-21.) Plaintiff argues that the "ALJ's assignment of jobs at [s]tep [f]ive was harmful error." (*Id*.) The Court agrees that the ALJ committed error at step five, but finds that the error was harmless.

### A.    Applicable Law

At step five, the Commissioner has the burden "to identify specific jobs existing in substantial numbers in the national economy that a claimant can perform despite his identified

limitations." *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015) (first quoting *Johnson*, 60 F.3d at 1432); and then citing 20 C.F.R. § 416.920(g)) (simplified).

The ALJ "first assesses a claimant's 'residual functional capacity,' defined as the most that a claimant can do despite 'physical and mental limitations' caused by his impairments and related symptoms." *Id.* (quoting 20 C.F.R. § 416.945(a)(1)). The ALJ "then considers potential occupations that the claimant may be able to perform." *Id.* (citing 20 C.F.R. § 416.966). In making this determination, "the ALJ relies on the [Dictionary of Occupational Titles ("DOT")], which is the SSA's 'primary source of reliable job information' regarding jobs that exist in the national economy." *Id.* at 845-46 (first quoting *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); then citing 20 C.F.R. § 416.969; and then citing 20 C.F.R. § 416.966(d)(1)). The DOT "describes the requirements for each listed occupation, including the necessary General Educational Development ('GED') levels; that is, 'aspects of education (formal and informal) . . . required of the worker for satisfactory job performance.'" *Id.* at 846 (citing DOT, App. C, 1991 WL 688702 (4th ed. 1991)). "The GED levels include the reasoning ability required to perform the job, ranging from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most)." *Id.* In addition to the DOT, "the ALJ relies on the testimony of vocational experts who testify about specific occupations that a claimant can perform in light of his residual functional capacity." *Id.* at 846 (first citing 20 C.F.R. § 416.966(e); and then citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009)).

Finally, "to conclude the Step Five analysis, the ALJ determines 'whether, given the claimant's [RFC], age, education, and work experience, he actually can find some work in the national economy.'" *Id.* (first quoting *Valentine*, 574 F.3d at 689; and then citing 20 C.F.R. § 416.920(g)).

PAGE 20 – OPINION AND ORDER

B.    **Analysis**

The ALJ limited Plaintiff to "simple and routine tasks" that involve Level 2 reasoning.

*See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1004 n.6 (9th Cir. 2015) ("Unpublished decisions of panels of this Court and opinions from some of our sister circuits have concluded that an RFC limitation to 'simple' or 'repetitive' tasks is consistent with Level Two reasoning.") (citations omitted). The ALJ also found that Plaintiff could perform the job of mailroom clerk, which involves Level 3 reasoning and therefore conflicts with limiting Plaintiff to simple and routine tasks. *See Zavalin*, 778 F.3d at 846 (holding that "there is an apparent conflict between limitation to simple, routine or repetitive tasks and the demands of Level 3 reasoning" (citing *Massachi*, 486 F.3d at 1153-54)).

"When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin*, 778 F.3d at 846.

Here, the ALJ did not resolve the apparent inconsistency between Plaintiff's RFC limitation and the mailroom clerk job. However, the ALJ found that Plaintiff could perform other jobs, namely office helper (DOT 239.567-010) and photocopy machine operator (DOT 207.685.014), which both require Level 2 Reasoning. *See Rounds*, 807 F.3d at 1004 n.4; *see also* DICOT 207.685-014, 1991 WL 671745 (Jan. 1, 2016) (reflecting that a photocopying machine operator requires "Reasoning: Level 2"); DICOT 239.567-010, 1991 WL 672232 (Jan. 1, 2016)

(reflecting that an office helper requires "Reasoning: Level 2").[5] Therefore, even if the ALJ erred

in assigning Plaintiff the job of mailroom clerk, the Court finds that the error is harmless because

the ALJ identified other jobs in the national economy that Plaintiff is capable of performing—

which Plaintiff does not dispute. *See Padilla v. Saul*, 852 F. App'x 277, 279 n.1 (9th Cir. 2021)

("To the extent the ALJ failed to reconcile the conflict between the limitation to simple, routine

tasks and the third identified job . . . which requires a reasoning level of 3, any such error was

harmless given that [the claimant] could perform at least one of the jobs the VE identified."

(citing *Zavalin*, 778 F.3d at 848)); *see also Tonya W. v. Comm'r of Soc. Sec.*, No. 3:20-cv-05742,

2021 WL 4086158, at *7 (W.D. Wash. July 6, 2021) ("Even if the ALJ erred in finding that [the

claimant] could perform the job of mailroom clerk, any error would be harmless, since the VE

testified that there were a range of other light and sedentary jobs [she] could perform, several of

which . . . require a reasoning level of two."), *aff'd sub nom.*, *White v. Kijakazi*, 2022 WL

6649616 (9th Cir. Oct. 11, 2022).

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is

free of harmful legal error and is supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 10th day of January, 2025.

HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

[5] "'DICOT' is the name of the on-line database on Westlaw that contains all of the job descriptions that are found in . . . the Dictionary of Occupational Titles." *Krueger v. Astrue*, 337 F. App'x 758, 761 n.4 (10th Cir. 2009).